No. 85-337

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

MARK J. PENLAND,

        Plaintiff and Appellant,

   -vs-

J. LEONARD DERBY and MARY D. DERBY,
his wife,

        Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead,
              The Honorable Frank I. Haswell, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Datsopoulos, MacDonald & Lind; Ronald B. MacDonald
        argued, Missoula, Montana

    For Respondent:

        Murphy, Robinson, Heckathorn & Phillips; David
        J. Dietrich argued, Kalispell, Montana

_____

                Submitted:  January 23, 1986

                   Decided:  February 20, 1986

Filed: FEB 20 1986

_____
                    Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The appellant, Penland, appeals the summary judgment granted by the Flathead County District Court, which allows respondents, Derbys to keep and use a summer cabin which lies across the legal boundary of their property, encroaching upon the appellant's property. Penland contends that there were insufficient facts in the record to support the District Court's finding of an equitable easement in the Derbys. We agree, and therefore need not discuss the other issues raised on appeal.

We reverse and remand for trial.

The issue before us is whether summary judgment was appropriate given the factual record and the legal and equitable theories argued to the District Court.

First we turn to the facts, as stipulated by the parties. Penland and the Derbys own adjacent property along Flathead Lake. Each of these properties include 63.6 feet of lake frontage. When Penland purchased his property in 1977, the seller and her real estate agent notified him of the existence of the boundary dispute between the seller and the Derbys. Penland was given notice that a summer cabin, owned by the Derbys, straddled the legal boundary between his and the Derbys' property, protruding approximately 15 feet onto his property. This cabin, has been in existence at the same location at least since 1934.

Surveys done in 1976 first indicated the encroachment of the summer home onto the appellant's property. The Certificates of Surveys, No. 2389 and No. 1881, establish the legal boundary between their properties and accurately depict

the location of the cabin. Each party respectively paid the real estate taxes on the real property depicted as "Plaintiff's" property and "Defendant's" property on the certificates of survey.

Settlement negotiations between the parties failed and Penland filed a complaint in District Court seeking declaratory judgment regarding the common boundary line and requesting the court to quiet title to the property and order the encroaching cabin removed. The parties submitted the matter on cross petitions for summary judgment, filing with the court stipulations of fact, stipulations of evidence, affidavits and briefs in support of their motions. In ruling on the cross motions, the District Court ordered that the respondents "have an equitable easement to keep the building upon the land on which it was constructed."

Penland cites this Court's admonishment, "A court, however, may not create as a matter of law an implied easement where the facts indicate the parties did not intend that an easement be created." White v. Landerdahl (Mont. 1981), 625 P.2d 1145, 1147, 38 St.Rep. 412, 415. He argues that neither he nor the respondents purchased their property with the intent that an encroachment should continue by virtue of an implied easement and that their negotiations failed because they did not agree to either an easement or removal of the encroaching building.

The Derbys reject Penland's contention that they relied on an implied easement theory. Rather they argue the basis of the District Court's order was the "relative hardship doctrine" which requires the court to balance the competing interests of the parties. The Derbys emphasize that Penland was aware of the encroachment when he purchased the land and

therefore is estopped from opposing Derbys' claims to an easement in equity. They argue that Penland has "unclean hands" because of this knowledge, while respondents inherited the property without knowledge of the encroachment. Respondents rely on Allman v. Stuart (1972), 158 Mont. 402, 492 P.2d 909, to argue that appellant willfully ignored their alleged ownership rights. The Derbys acknowledge that this Court has yet to adopt an equitable "relative hardship doctrine" but argue for its adoption in this case.

It is unclear upon what theory the District Court based its finding of the existence of an equitable easement. While the District Court was not limited to the relative hardship doctrine, the other common equitable theories for the creation of easements are unlikely, given these facts. The record indicates no subservience of one part of the tenement to a dominant portion prior to severance. Michaelson v. Wardell (1980), 186 Mont. 278, 607 P.2d 100. Nor do the facts indicate reservation of an easement at the time Penland, or his predecessors, purchased the property. Burlingame v. Marjerrison (Mont. 1983), 665 P.2d 1136, 1139, 40 St.Rep. 1005. Further, no facts in the record establish an agreement between the parties to create an easement. Johnson v. Meiers (1946), 118 Mont. 258, 164 P.2d 1012. There is no factual basis for an easement by necessity. Schmid v. McDowell (1982), 199 Mont. 233, 649 P.2d 431. Nor does the record indicate any misrepresentation of fact by Penland estopping him from protesting an easement in equity. Allman v. Stuart (1972), 158 Mont. 402, 405, 492 P.2d 909, 912.

The Derbys' reliance upon Allman is unfortunate, as that case acutally bolsters Penland's argument. In Allman, the

party with "unclean" hands ignored the right of the legal owner of the land underneath his building to request he remove his building. That case is factually distinguishable, however, in that the building's owner bought the building with full knowledge that someone else owned the land. The Derbys argue Penland bought the land with notice of their "alleged" property right. Actually, the record indicates Penland bought his property with notice that although the cabin extended across the boundary, the surveys placed his legal boundary just where the parties have since stipulated it exists.

Because there are no facts in the record to support any established equitable easement theory we turn to the novel theory propounded by the Derbys, the doctrine of "relative hardship." If the District Court's order rests on that doctrine, this Court must remand the case for trial. If we affirmed the District Court's judgment on a relative hardship theory the Court would be adopting a new theory of equitable easements, not requiring intent of the parties as an element. Considering a new legal theory on appeal from summary judgment is inappropriate, as a federal district court has explained:

> Summary judgment, with ever-lurking issues of fact, is always a treacherous shortcut and, in cases like these, too fragile a foundation for so heavy a load. Such relief is always discretionary, and in cases posing complex issues of fact and unsettled questions of law, sound judicial administration dictates that the court withhold judgment until the whole factual structure stands upon a solid foundation of a plenary trial where the proof can be fully developed, questions answered, issues clearly focused and facts definitively found.

Petition of Bloomfield S. S. Co. (D.C.N.Y. 1969), 298 F.Supp. 1239, 1242, aff'd on other grounds (2d Cir. 1970), 442 F.2d 728.

The record discloses no set of facts supporting an equitable easement based on any previously accepted theory in Montana. Furthermore it would be unwise to consider a novel theory of equitable easements without the benefit of a complete record developed at trial. Therefore, we reverse and remand for trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices